1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT
8          CENTRAL DISTRICT OF CALIFORNIA
9
10   RICHARD B.,[1]                    Case No. 5:23-cv-01553-SSC
11                        Plaintiff,
12           v.                        MEMORANDUM AND ORDER
13   MARTIN J. O'MALLEY,[2]
14   Commissioner of Social Security,
15                        Defendant.
16
17
18        Plaintiff Richard B. seeks judicial review of the final decision of
19   the Commissioner of the Social Security Administration denying his
20   application for Title II disability insurance benefits.  The Court finds
21   that the administrative law judge failed to provide clear and convincing
22   reasons supported by substantial evidence for rejecting Plaintiff's self-
23   reported symptoms, and remands for further proceedings.
24   _____
25        [1] Plaintiff's name is partially redacted in accordance with Rule
     5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the
26   recommendation of the Committee on Court Administration and Case
     Management of the Judicial Conference of the United States.
27
28        [2] The Commissioner's name has been updated in accordance with
     the requirements of Rule 25(d) of the Federal Rules of Civil Procedure.

# I

In July 2021, Plaintiff filed an application for disability insurance benefits alleging that he had been disabled since January 2019.  (ECF 12-3 at 16, 33; ECF 12-7 at 2, 6.)  His application was denied initially and upon reconsideration.  (ECF 12-5 at 7, 31.)  He requested a hearing before an administrative law judge (ALJ) (*id.* at 37), which was held on August 9, 2022 (ECF 12-3 at 30).  Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert.  (*Id.*)

In July 2022, the ALJ issued a decision that Plaintiff was not under a disability, as defined in the Social Security Act.  (*Id.* at 13–25.)  The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Act.[3]  *See* 20 C.F.R.

---

[3] The sequential evaluation of disability is set forth at 20 C.F.R. §§ 404.1520 (disability insurance benefits) and 416.920 (supplemental security income).  Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations.  If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past.  Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy.  This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (cleaned up).

2

§§ 404.1520(a)(4), 416.920(a)(4); *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *as amended* (Apr. 9, 1996), *superseded by regulation on other grounds*.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 22, 2019,[4] the alleged onset date.  (ECF 12-3 at 18.)

At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; degenerative disk disease of the lumbar spine; fibromyalgia; diabetes; sleep apnea; and hypertension.  (*Id.*)  The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities.  (*Id.*)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the applicable regulations.  (*Id.* at 19–20.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work, except that he could "never climb ladders, ropes, or scaffolds[,] . . . occasionally climb ramps and stairs, balance . . . , stoop, kneel, crouch, and crawl[,] [and] . . . tolerate no exposure to hazards such as unprotected heights and heavy machinery."  (*Id.* at 20.)  As relevant here, in determining Plaintiff's RFC, the ALJ found that Plaintiff's testimony regarding the severity of his symptoms was not entirely consistent with other evidence in the record.  (*Id.* at 20, 22–23.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as an industrial mechanic.  (*Id.* at 24.)  At step five, the ALJ made findings of Plaintiff's vocational profile.  The ALJ noted that on the alleged onset date, Plaintiff was 41 years old, defined

---

[4] The ALJ found an alleged onset date of January 22, 2019, at the hearing.  (ECF 12-3 at 33.)

as a younger individual, and that he had at least a high school education. (*Id.*) The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.*) Based on the testimony of a vocational expert, the ALJ identified the following occupations: cleaner housekeeping, power screwdriver operator, casing splitter. (*Id.* at 25.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (*Id.*)

The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 2–5.)

## II

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458–59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Robbins*, 466 F.3d at 882 (internal quotation marks omitted)).

However, it is not this Court's function to second guess the ALJ's conclusions and substitute its own judgment for the ALJ's.  See *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned . . . .'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted).

### III

Plaintiff contends that the ALJ erred in discrediting his subjective-symptom testimony.[5]  (ECF 17 at 10–16.)  The Court agrees.

### A

Plaintiff submitted both oral and written testimony.  At the hearing before the ALJ, Plaintiff testified that he "ha[d] pain" due to fibromyalgia, including "pain in [his] wrists and [his] elbows, joints, things like that."  (ECF 12-3 at 38.)  He stated that "every day . . . is different" in that he has "pain in different areas" and "fe[lt]

---

[5] Plaintiff argues that the ALJ erred in several other ways.  (ECF 17 at 2–10.)  The Court finds the issue addressed herein to necessitate remand, and thus, declines to address the remaining issues.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

different . . . body-wise." (*Id.* at 44.)  Generally, he felt "stiff all the
time" and experienced daily painful "attacks or something" in his joints.
(*Id.* at 43–44.)  He stated he had "gained some weight" because he was
"in a lot of pain" and had not "been active at all." (*Id.* at 39.)  During
the hearing itself, Plaintiff alleged that his "knees and [his] ankles
[we]re giving [him] problems." (*Id.* at 41.)

Plaintiff described taking pain medication, including Motrin and
Tylenol regularly, and Percocet "once or twice every couple weeks,"
"when it[ was] just really bad," and he was at "the peak of [his] pain,"
which would "basically put[] him to sleep." (*Id.* at 41, 46.)  He also
stated that, approximately "once every couple weeks" or "once a week,"
depending on his pain level and the location of the pain, he would "try
and do the stretches" recommended by his doctor. (*Id.* at 43.)

As to his limitations, Plaintiff stated that he did not "go upstairs"
in his home because it was "really hard to get up and down stairs," and
he did not "feel safe" or "sturdy" doing so. (*Id.* at 37)  Plaintiff testified
that he felt unstable on his feet and "like [his] back [was] just going to
let [him] drop to the floor." (*Id.* at 40.)  He stated that he "ha[d] fallen"
before but did not "know if it was a result of [his] conditions." (*Id.* at
43.)  Plaintiff alleged that "one of [his] main issues" was his inability to
stand for more than "10 minutes." (*Id.* at 39.)  He also stated that he
could walk no more than "probably 20 minutes" before stopping because
he was "in pain or uncomfortable" and might need "to lean" or "hold
[him]self up." (*Id.* at 39–40.)  Plaintiff described needing to lean on
walls or furniture when walking and "leaning on the railing" if climbing
stairs. (*Id.* at 37, 40.)  He stated that he could not "walk at a normal
pace" and "walk[ed] slower" because he was "usually limping." (*Id.* at
40.)  He explained that he did not use any sort of handheld assistive

6

1  device to get around but "probably should [have been] using a cane."
2  (*Id.*)

3      Plaintiff also testified that he could sit for a similar amount of
4  time, alternating with lying on the couch. (*Id.* at 40–41.) On the days
5  when his knees and ankles, or some other body part, were hurting, he
6  would instead lie "on [the] couch and ha[ve] [his] feet kind of up, resting
7  on a pillow for a little while." (*Id.* at 41.) He further qualified that his
8  ability to sit depended on his back-pain that day, and when his back
9  hurt, he did more lying than sitting. (*Id.*) Generally, there was "not
10  really anywhere that [he] stay[ed] in one position" because he was
11  "always just trying to get comfortable. (*Id.*) Plaintiff also stated that he
12  "tr[ied] not to do much lifting," and that he could, at most, "carry a
13  gallon of milk from the car." (*Id.* at 41–42.)

14      Regarding his daily life, Plaintiff testified that he resided with his
15  fiancée and his two children, aged seventeen and seven. (*Id.* at 37.)
16  Plaintiff did not do any household chores other than briefly "run[ning]
17  the vacuum" to clean up after himself if he dropped something. (*Id.* at
18  44.) His family took care of the pets because he experienced back-pain
19  with "[a]ny type of bending." (*Id.* at 47.) He alleged that he limited his
20  driving by not "tak[ing] far trips" and would make stops every "30
21  minutes" because he could not "just sit in that one position." (*Id.* at 43.)
22  He also described limitations in taking care of personal needs, stating,
23  for example, that on days when he experienced "a lot" of pain, he could
24  not stand to brush his teeth. (*Id.* at 44.)

25      In addition, Plaintiff testified that he had "major sleep apnea" and
26  "use[d] a CPAP," but, as he still struggled to fall asleep and maintain
27  sleep, he did not think it was helping. (*Id.* at 44–45.) He described
28  sleeping a total of "maybe an hour or two hours" per night. (*Id.* at 45.)

During the day, he would nap "maybe several times" and sometimes
would "sleep the whole day away," staying up "for an hour or two" after
waking up in the morning, then "go[ing] back to sleep the rest of the
day" and waking up at "9 or 10:00 at night." (*Id.* at 46.)  Plaintiff stated
that, even on a "good day," he would likely "fall asleep" during the day
for "[m]aybe an hour." (*Id.* at 46–47).

In December 2021, Plaintiff filled out a Function Report[6] that
described how his impairments impacted his activities of daily living.
(ECF 12-8 at 53–60.)  His statements in the Function Report largely
tracked his hearing testimony, but Plaintiff additionally reported
"car[ing] for [his] 17yr old and 6yr old children" and being the adult at
home when they returned from school. (*Id.* at 54.)  He also wrote that,
"maybe a couple times a week," he would "make a sandw[]ich or frozen
dinner." (*Id.* at 55.)

**B**

Plaintiff argues that the ALJ erred in evaluating this subjective-
symptom testimony. (ECF 17 at 10–16.)  "Where, as here, [Plaintiff]
has presented evidence of an underlying impairment and the
government does not argue that there is evidence of malingering, [the
Court] review[s] the ALJ's rejection of [Plaintiff's] testimony for specific,
clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1136

---

[6] The SSA uses standardized forms to gather information about
the functional ability of a claimant.  Called Function Reports, they are
often submitted by a claimant or family members.  *See* 20 C.F.R.
§ 416.929 ("We will consider all of your statements about your
symptoms, such as pain, and any description your medical sources or
nonmedical sources may provide about how the symptoms affect your
activities of daily living and your ability to work."); Function Report –
Adult, OMB 0960-0681, https://omb.report/omb/0960-0681 (last visited
Aug. 22, 2024).

1  (9th Cir. 2014) (en banc) (footnote omitted). This is not an easy

2  requirement to meet: "[t]he clear and convincing standard is the most

3  demanding required in Social Security cases." *Moore v. Comm'r of Soc.*

4  *Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

5      The ALJ found that Plaintiff's impairments could be expected to

6  cause his alleged symptoms, but that his "statements concerning the

7  intensity, persistence and limiting effects of these symptoms [we]re not

8  entirely consistent with the medical evidence and other evidence in the

9  record . . . ." (ECF 12-3 at 23.) The ALJ noted two areas of

10 inconsistency, neither of which amounted to a clear and convincing

11 reason.[7]

12                                    **1**

13     First, the ALJ made a finding of inconsistency based on evidence

14 of Plaintiff's self-reported daily activities. Specifically, the ALJ noted

15 that Plaintiff "cares for his two children and he is the adult at home

16 when they come home from school," was "able to make simple meals,"

17 and could "drive[] for short periods of time." (*Id.*)

18     To discredit Plaintiff's allegations, the ALJ was required to

19 "mak[e] specific findings relating to those activities," showing that they:

20

21     [7] The Court discusses two inconsistencies in the sections below.

22 The ALJ noted a third—that the objective medical evidence "fail[s] to

23 provide strong support for the claimant's allegations of disabling

24 symptoms and limitations" and "do[es] not support the existence of

25 limitations greater than [the RFC]." (ECF 12-3 at 20.) On its own, this

26 was not a sufficient reason to discount Plaintiff's testimony. *See Rollins*

27 *v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While an ALJ may

28 find testimony not credible in part or in whole, he or she may not

disregard it solely because it is not substantiated affirmatively by

objective medical evidence."). Because the ALJ stated no other legally

sufficient reason, the Court does not further discuss this finding.

(1) contradict the claimant's testimony; and/or (2) meet the threshold for transferable work skills. *Burch*, 400 F.3d at 681 ("if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities"); *see Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"), *superseded by regulation on other grounds*. The ALJ did neither.

As to contradiction with the testimony, the ALJ stated only that Plaintiff's self-reported ability to care for children at home without assistance could be "quite demanding both physically and emotionally . . . ." (*Id.* at 22.) This general finding is insufficient. *See Burrell*, 775 F.3d at 1138 ("[courts] may not take a general finding—an unspecified conflict between [c]laimant's testimony about daily activities and h[is] reports to doctors—and comb the administrative record to find specific conflicts").

"[A]ctivities, such as childcare, may support an ALJ's decision when it can be determined that they are performed for a substantial part of the day." *Bridget A. A. v. Saul*, No. 5:20-cv-01163-JDE, 2021 WL 2634822, at *5 (C.D. Cal. June 25, 2021) (collecting cases). Plaintiff's written testimony that he provided after-school care for his children, aged six and seventeen, does not necessarily represent a substantial portion of his day. (ECF 12-8 at 54.) Moreover, the ALJ did not support this discussion with specific findings concerning the nature of Plaintiff's care of his children. *Compare Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (absent specific details of childcare responsibilities,

1    including whether or how often plaintiff "picked up the children, played

2    with them, bathed them, ran after them, or did any other tasks that

3    might undermine her claimed limitations," ALJ conclusion was

4    unsupported) *with Rollins*, 261 F.3d at 857 (plaintiff's claim of totally

5    disabling pain undermined by self-report that she attended to 'all of

6    [her] children's needs; meals, bathing, emotional, discipline, etc.,' from

7    early in the morning until 10 p.m.).  Nor did the ALJ point to specific

8    portions of the testimony that were rendered inconsistent.  *See Burrell*,

9    775 F.3d at 1138.  The purported contradiction is not otherwise obvious

10   to the Court.

11       The remaining activities identified by the ALJ suffer similarly.

12   The ALJ provided no explanation concerning the purported

13   inconsistency between Plaintiff's testimony and his ability to make

14   simple meals and drive for short periods of time.  *See id.*  Moreover,

15   these types of daily activities do not bely Plaintiff's testimony

16   concerning his inability to work.  The Ninth Circuit "has repeatedly

17   asserted that the mere fact that a plaintiff has carried on certain daily

18   activities, such as grocery shopping, driving a car, or limited walking for

19   exercise, does not in any way detract from h[is] credibility as to h[is]

20   overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.

21   2001); *see also Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024)

22   ("watching television and playing video games, help[ing] care for his

23   mother's wild cats, prepar[ing] simple meals, going out to his shop to

24   work on projects," "walk[ing] every now and then," "attend[ing] to basic

25   self-care," and "driving a vehicle" not readily inconsistent with

26   plaintiff's testimony concerning severe headaches that occurred two or

27   three times a week (cleaned up)); *Tina M. v. Comm'r of Soc. Sec.*, 418 F.

28   Supp. 3d 614, 618–19 (W.D. Wash. 2019) (plaintiff's ability "to make

1    simple meals, feed her dogs, dress herself, bathe, load the dishwasher,

2    do laundry, and vacuum" did not contradict testimony about symptoms

3    stemming from fibromyalgia).

4         As to the second prong of the requisite analysis, the ALJ did not

5    discuss how the enumerated activities demonstrate transferrable work

6    skills, presumably relying only on the first prong.  *See Burch*, 400 F.3d

7    at 681.  Thus, the ALJ's finding that Plaintiff's symptom testimony was

8    inconsistent with his daily activities is not convincing.

9                                    **2**

10        Second, relying on Plaintiff's self-reports to medical providers in

11   treatment notes, the ALJ found Plaintiff's symptom testimony

12   inconsistent because "[a]t certain points in the record the claimant was

13   exercising" at a "moderate to strenuous level."  (ECF 12-3 at 22.)  An

14   ALJ may reject a plaintiff's symptom testimony when it is contradicted

15   by the medical evidence.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*,

16   533 F.3d 1155, 1161 (9th Cir. 2008); *Tommasetti v. Astrue*, 533 F.3d

17   1035, 1039 (9th Cir. 2008).  But the ALJ must explain how the medical

18   evidence contradicts the plaintiff's testimony.  *See Dodrill v. Shalala*, 12

19   F.3d 915, 918 (9th Cir. 1993).  The Court finds that the ALJ failed to

20   identify sufficiently any actual inconsistencies.

21        As noted by the ALJ, the treatment records reflect that, at

22   various points, Plaintiff reported engaging in exercise "at a moderate to

23   strenuous level."  (ECF 12-9 at 91 ("exercises 30 minutes per week at a

24   moderate to strenuous level"), 116 ("exercises 120 minutes per week at

25   a moderate to strenuous level"), 134 ("exercises 60 minutes per week at

26   a moderate to strenuous level"); ECF 12-10 at 65 ("[e]xercises 20

27   minutes 1 days per week at a moderate or strenuous level"), 66

28   ("exercises 30 minutes 2 days per week at a moderate or strenuous

                                    12

1  level"), 70 ("[e]xercises 20 minutes 2 days per week at a moderate or

2  strenuous level"), 71 ("[e]xercises 20 minutes 1 days per week at a

3  moderate or strenuous level"), 76 "[e]xercises 30 minutes 2 days per

4  week at a moderate or strenuous level").)  Medical records also

5  document periods of time during which Plaintiff reported abstaining

6  entirely from exercise.  (ECF 12-9 at 7 ("exercises 0 minutes 0 days per

7  week at a moderate or strenuous level"), 8 (same), 78 ("current exercise

8  activities: none reported"), 205 ("exercises 0 minutes per week at a

9  moderate to strenuous level"); ECF 12-10 at 71 ("[e]xercises 0 minutes 0

10  days per week at a moderate or strenuous level"), 109 (same).

11      Generally, the ALJ was permitted to weigh all of this evidence and

12  resolve it in favor of a finding of inconsistency.  *See Brown-Hunter*, 806

13  F.3d at 492.  However, because the ALJ failed sufficiently to develop the

14  record as to the nature of the exercise, it does not necessarily

15  demonstrate inconsistency.  *See Gonzalez v. Sullivan*, 914 F.2d 1197,

16  1201 (9th Cir. 1990) (ALJ erred in discrediting pain testimony based on

17  plaintiff's report of walking one to one-and-a-half miles twice a day);

18  *Bridget D. v. Kilolo Kijakazi*, No. 2:20-cv-6198-SK, 2021 WL 5917117, at

19  *1 (C.D. Cal. Sept. 27, 2021) (plaintiff's reported swimming insufficient

20  reason to discredit testimony where ALJ did not develop record

21  concerning nature and extent); *Sanchez v. Colvin*, No. CV 16-05136-

22  KES, 2017 WL 3971846, at *11 (C.D. Cal. Sept. 7, 2017) (because record

23  was ambiguous as to nature and extent, treatment notes' references to

24  swimming and walking did not support ALJ's conclusion that plaintiff's

25  ability to exercise was inconsistent with her claimed limitations).  It is

26  unclear to what kind of exercise the treatment records refer, and

27  whether or how such exercise was inconsistent with specific portions of

28  Plaintiff's testimony.  Notably, Plaintiff testified that he had not "been

13

active at all" around the time of the hearing.  (ECF 12-3 at 39.)
Plaintiff did not testify that he abstained entirely from exercise
throughout the alleged disability period.  In addition, Plaintiff
explained that every day is different in relation to his pain in different
body parts.  (*Id.* at 44.)  He stated that, depending on his pain level and
the location of the pain, he might sometimes do stretches recommended
by his doctor.  (*Id.* at 43.)  None of this testimony is obviously
inconsistent.  Thus, the ALJ erred in relying on this ground to reject
Plaintiff's testimony without inquiring further.

Next, to discredit Plaintiff's complaints based on evidence of daily
activities such as exercise, the ALJ was required to find that Plaintiff
could spend "a substantial part of his day engaged in pursuits involving
the performance of physical functions that [were] transferable to a work
setting." *See Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989),
*superseded by regulation on other grounds*; *Bullington v. Astrue*, No. 11-
CV-2459-LAB(JMA), 2013 WL 1147725, at *17 (S.D. Cal. Feb. 13, 2013)
(ALJ erred in rejecting testimony based on reported ability to walk 3–4
times a week for 30 minutes at a time and at-home stretching exercises
because plaintiff did not do those daily), *report and recommendation
adopted as modified*, No. 11cv2459-LAB (JMA), 2013 WL 1147649 (S.D.
Cal. Mar. 19, 2013).  The records cited by the ALJ note that Plaintiff
exercised, at most, several times per week.  And the ALJ neither made
the requisite showing that Plaintiff spent a substantial part of his day
engaging in exercise, nor, as discussed above, that the nature of the
exercise rendered it transferable to a work setting.

Finally, there is evidence in the record that exercise was a
treatment recommendation for Plaintiff's fibromyalgia condition (ECF
12-9 at 135 ("continue[d] pain all over due to fibromyalgia and chronic

low back pain . . . . exercise does not seem to help"), 137 ("The primary management recommendation for fibromyalgia is to do regular exercise most days of the week."), 173 (same)), and exercise was recommended as part of a weight-management workshop (ECF 12-10 at 70, 76).  The Ninth Circuit has found no inconsistency where a plaintiff engages in certain exercises "*despite* pain for therapeutic reasons." *Vertigan*, 260 F.3d at 1050 (emphasis in original).  Thus, absent any finding that Plaintiff was engaging in non-therapeutic exercise inconsistent with his alleged limitations, the ALJ erred in rejecting Plaintiff's testimony on this ground.  *See id.*; *Maryanne M. v. Saul*, No. 3:19-CV-02008-AHG, 2021 WL 1186830, at *10 (S.D. Cal. Mar. 30, 2021) (ALJ failed to explain how plaintiff's reports of daily stretching and swimming once or twice per week "to take pressure off of her spine" were inconsistent with her alleged limitations).

Accordingly, the ALJ erred in rejecting Plaintiff's testimony.[8]

***

Because the ALJ did not provide at least one supported, clear and convincing reason to reject Plaintiff's subjective-symptom testimony, the ALJ's error was not harmless.  *See Molina*, 674 F.3d at 1115 ("an

---

[8] Defendant contends that the ALJ cited two additional grounds to reject Plaintiff's testimony: (1) lack of mental-health treatment, and (2) "improvement with treatment" as to Plaintiff's physical conditions. (ECF 22 at 13–14 (citing ECF 12-3 at 19, 21, 24).)  The ALJ made no such conclusions.  The ALJ merely repeated, elsewhere in the decision, certain relevant notations as they appeared in the medical records. (ECF 12-3 at 21, 24.)  The ALJ did not raise these in relation to rejecting Plaintiff's testimony, and the Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630.

ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

IV

Remand is appropriate on the ground that the ALJ did not identify legally sufficient reasons for rejecting Plaintiff's subjective-symptom testimony.  The outstanding issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *Brown-Hunter*, 806 F.3d at 496.

ORDER

For the reasons set forth above, **IT IS ORDERED** that Judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** this action for further proceedings consistent with this Memorandum and Order.

DATED: August 23, 2024

_____
HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE